T. Kenneth James, Ed.D Commissioner of Education Arkansas Department of Education 4 State Capitol Mall Little Rock, AR 72201-1071
Dear Dr. James:
I am writing in response to your request for an opinion on the following questions concerning open enrollment charter schools:
 1. What is the definition of `net assets' as that term is used in Ark. Code Ann. § 6-23-506? Does the term refer to the status of each particular item (i.e., a `net asset' is each individual item which has no (further) liability attached to it), or, in a collective sense, the entire group of asset items, some of which are sold to realize proceeds to be used to pay off liabilities attaching to the other items?
 2. If the definition of `net assets' is the latter scenario (i.e., using proceeds from the sale of some assets to pay off any remaining obligations on the other assets), what options are available to the Department to pay off such assets?
 3. Under the Arkansas Constitution, the Arkansas Charter Schools Act of 1999, and any other applicable statutes, is the Department vested with the necessary authority to use the monetary assets (i.e., funds remaining in the bank account of the charter school and any moneys obtained from the sale of non-cash assets) to pay the remaining bills (including such items as salaries and utilities) of the former charter schools, or does such responsibility rest solely with the (now former) Charter holders? *Page 2 
As background for these questions, you note that the Arkansas State Board of Education ("Board") has accepted the surrender of the charters of two open-enrollment charter schools, and that the Arkansas Department of Education ("Department") has come into possession of both the monetary and tangible assets of the charter schools. You further relate that the two schools have outstanding bills owed to various vendors and employees for services rendered either during the time the schools were operational or during the process of winding up the schools' business affairs. You have also cited to a previous opinion of this office that addressed the meaning of the term "net assets" under A.C.A. § 6-23-506.
RESPONSE
With regard to your first two questions, the term "net assets" in the context of A.C.A. § 6-23-506 refers, in my opinion, to the status of particular items, the purpose being to identify publicly-funded unencumbered assets as property of the state upon the charter school's dissolution, or upon the nonrenewal or revocation of its charter. In response to your third question, the Department in my opinion lacks authority to use the assets to pay remaining bills of the charter schools.
Question 1 — What is the definition of `net assets' as that term is usedin Ark. Code Ann. § 6-23-506? Does the term refer to the status of eachparticular item (i.e., a `net asset' is each individual item which hasno (further) liability attached to it), or, in a collective sense, theentire group of asset items, some of which are sold to realize proceedsto be used to pay off liabilities attaching to the other items?
It will be helpful in addressing this question to first set out the full text of A.C.A. § 6-23-506, which was recently amended to provide as follows:
 (a) Upon dissolution of the open-enrollment public charter school or upon nonrenewal or revocation of the charter, all net assets of the open-enrollment public charter school, including any interest in real property, purchased with public funds shall be deemed the property of the state, unless otherwise specified in the charter of the open-enrollment public charter school.
 (b)(1) If the open-enrollment public charter school used state funds to purchase or finance personal property, real property, or fixtures *Page 3 
for use by the open-enrollment public charter school, the State Board of Education may require that the property be sold.
 (2) The state has a perfected priority security interest in the net proceeds from the sale or liquidation of the property to the extent of the public funds used in the purchase.
A.C.A. § 6-23-506 (Repl. 1999) (emphasis added), as amended by Acts 2007, No. 736, § 31.[1]
The term "net assets" under subsection 6-23-506(a) has not been defined by the legislature, and I cannot provide a controlling definition of a term where the legislature has not done so. See generally Op. Att'y Gen.2007-037. As you have pointed out, one of my predecessors, relying upon general rules of statutory construction, looked to Black's LawDictionary (5th ed. 1979), and interpreted "net assets" under this Code section to mean "excess of assets over liabilities in connection with assets that were purchased with public funds." Op. Att'y Gen. 2001-308. That interpretation it is not particularly helpful in responding to your particular question. Opinion 2001-308 involved a question of ownership of property after the surrender of a charter, where no debt remained in connection with any of the former charter school's property. The matter of selling assets to pay off liabilities was not at issue.
Your question, more specifically, it seems, is whether "net assets" under subsection 6-23-506(a) might refer to the entire group of assets, with some being used to satisfy liabilities, including salaries, utilities, and debt associated with property. While some support for viewing the term "net assets" in this collective sense might be found in the general concept of "net assets," I believe such an interpretation is untenable in the particular context of A.C.A. § 6-23-506. Subsection6-23-506(a), supra, is concerned with identifying those assets that are deemed state assets "upon dissolution of the . . . school or upon nonrenewal or revocation of the charter. . . ." The assumption is that "net assets" are identifiable at that point, i.e., upon the occurrence of an open-enrollment public charter school's "dissolution . . . nonrenewal or revocation. . . ." Viewed from that perspective, the term "net assets" under the statute cannot reasonably be construed to contemplate the sale of debt-free assets or the use of cash assets after dissolution or *Page 4 
nonrenewal/revocation, to satisfy a former open-enrollment public charter school's remaining liabilities.
Accordingly, in the absence of further guidance from the legislature, I interpret "net assets" under A.C.A. § 6-23-506(a) to refer to the status of particular items upon the occurrence of dissolution, or charter nonrenewal or revocation, the purpose being to identify publicly-funded unencumbered assets as property of the state at that point.
I believe this interpretation is further buttressed by subsection6-23-506(b), supra, enacted under Act 736 of 2007, which specifically addresses the sale of property purchased or financed by the charter school. In establishing the Board's authority to sell property that was acquired by the school, this subsection in no way suggests that unencumbered assets might be sold to relieve other debt. To the contrary, it seems clear that this subsection is intended to afford the state a means of recouping state funds.
Question 2 — If the definition of `net assets' is the latter scenario(i.e., using proceeds from the sale of some assets to pay off anyremaining obligations on the other assets), what options are availableto the Department to pay off such assets?
See response to Question 1.
Question 3 — Under the Arkansas Constitution, the Arkansas CharterSchools Act of 1999, and any other applicable statutes, is theDepartment vested with the necessary authority to use the monetaryassets (i.e., funds remaining in the bank account of the charter schooland any moneys obtained from the sale of non-cash assets) to pay theremaining bills (including such items as salaries and utilities) of theformer charter schools, or does such responsibility rest solely with the(now former) Charter holders?
While there may be some question whether the constitution would prevent the Department from using the assets that are now state assets to pay the charter schools' remaining bills, in my opinion a statute nevertheless prevents this action.
Regarding the Arkansas Constitution, consideration must be given to Article 12, Section 12, which provides: *Page 5 
 Except as herein otherwise provided, the state shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the state ever be released or in any manner discharged save by payment into the public treasury.
Ark. Const. art. 12, § 12 (emphasis added).
The phrase "or other corporation whatever" under this provision has been construed to apply only to private corporations or those engaged in private enterprises. Ruff v. Womack, 174 Ark. 971, 298 S.W.2d 222
(1927). With regard to obligations of the former charter schools, therefore, as long as such obligations were not incurred by a private entity, or by a county, town, or city, it would seem that there is no issue under art. 12, § 12. As discussed below, however, I believe a statute nevertheless prevents the payment by the Department.
If the former charter schools' remaining bills were incurred by a county, town, or city, or by a private "eligible entity,"[2] the question arises whether Ark. Const. art. 12, § 12 prevents the Department from paying such bills out of bank funds or sales proceeds that are property of the state. There is no controlling Arkansas precedent interpreting art. 12, § 12 in this precise situation. As can be seen, this constitutional provision does not prevent the state from assuming the debt or liability of political subdivisions and corporations if the debt was created to "provide for the public welfare. . . ." Accord Op. Att'y Gen. 95-035. Although certainly there may be an issue in this respect, the general exception for the "public welfare" may be sufficiently broad to prevent art. 12, § 12 from standing as a clear impediment to the Department's payment of the remaining bills, as contemplated by your question.
In my opinion, however, a statute prevents such payment. I am referring to A.C.A. § 6-23-503, which states: *Page 6 
 (a) An open-enrollment public charter school may not use the moneys that it receives from the state for any sectarian program or activity or as collateral for debt.
 (b)(1) No indebtedness of any kind incurred or created by the open-enrollment public charter school shall constitute an indebtedness of the state or its political subdivisions, and no indebtedness of the open-enrollment public charter school shall involve or be secured by the faith, credit, or taxing power of the state or its political subdivisions.
 (2) Every contract or lease into which an open-enrollment public charter school enters shall include the wording of subdivision (b)(1) of this section.
A.C.A. § 6-23-503 (Repl. 1999), as amended by Acts 2007, No. 736, § 28 (emphasis added).
This statute plainly reflects legislative intent to proscribe the state from incurring debt on behalf of a charter school. In my opinion, the Department lacks authority as a consequence of this statute to undertake to pay the charter schools' remaining bills out of assets that are now state assets. Accordingly, while it is possible that the constitution does not prevent such payment by the Department, the answer to your question is "no," under the current statutes.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The 2007 act added the underlined language in subsection (a), and the entire text of subsection (b).
[2] An open-enrollment charter school "shall be governed by an eligible entity that is fiscally accountable and under the governing structure as described by the charter[.]" A.C.A. § 6-23-401(a)(1) (Repl. 1999). An "eligible entity" may be "a public institution of higher education, a private nonsectarian institution of higher education, a governmental entity, or an organization that is nonsectarian in its program, admissions policies, employment practices, and operations and is exempt from taxation under § 501(c)(3) of the Internal Revenue Code of 1986[.]" A.C.A. § 6-23-103(3) (Supp. 2005).